WILLIAM KINNEY, plaintiff in error, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, defendants in error.

*Error to Sangamon.*

Parol evidence is admissible, in an action by the State against a Commissioner of the Board of Public Works, for money had and received, to show that the Fund Commissioners paid out money for the entry of lands by a Commissioner of the Board of Public Works, without any order or draft, although the statute did not authorize the paying of the same, except upon drafts drawn by the Board of Public Works.

The Board of Public Works, when sitting, under the statute, to audit and adjust the accounts of its members and others, did not possess judicial powers, but simply those of agency on the part of the State, to state an account, and agree upon the balance. But their settlement, like any other settlement of accounts, would be *prima facie* evidence of the state of the account; but it may be opened by showing fraud or mistake, or that any item really existing was not taken into consideration.

THIS cause was heard in the Court below, at the July term, 1841, before the Hon. Samuel H. Treat and a jury. Verdict and judgment were rendered for the plaintiffs.

S. STRONG and L. TRUMBULL, for the plaintiff in error, cited Laws of 1837, 138, 140; Laws of 1838–9, 94; McConnel *v.* Wilcox, 1 Scam. 351–3.

J. LAMBORN, Attorney General, for the defendants in error.

SCATES, Justice, delivered the opinion of the Court:

This was an action of *assumpsit.* The declaration contains but one count, for money had and received, to the damage of plaintiffs, to the amount of $120,000. The defendant pleaded *non assumpsit* and setoff, &c. Issues were joined; jury, and verdict and judgment for the plaintiffs below, for $10,006.61.

On the trial exceptions were taken, embodying part of the evi-

dence, the instructions, and opinions of the Court.   The bill of
exceptions shows that the defendant, while acting as one of the Com-
missioners of the Board of Public Works, received from the Board
of Fund Commissioners, upon drafts drawn in pursuance of law,
$157,917.44; and that he went out of office the last of Febru-
ary or March, 1839.   That the defendant below gave in evidence
the report and abstract of vouchers made and taken by a commit-
tee of the Board of Public Works, appointed to audit the defend-
ant's accounts, as commissioner, in which they report that, by the
vouchers, he had drawn the sum of $157,917.44, and had paid
out the sum of $174,062.26.   The said committee of adjustment
further report, that "the Fund Commissioners report an amount
of money, as having been paid by them for lands entered by said
Commissioner, for which the committee do not find a voucher, or
any other evidence filed in this office."   The report was accom-
panied by an abstract containing a statement, in detail, of the vouch-
ers referred to in the report.

The plaintiffs below proved, by a witness, that the Fund Com-
missioners had paid, without any draft or written evidence, to
the said defendant, as commissioner, the sum of $25,079.30, for
lands entered by him.   The defendant below excepted to this evi-
dence, but the Court permitted the witness, the clerk of the Board
of Fund Commissioners, to state that he had, by direction of the
Fund Commissioners, paid into the land office, in scrip and money
belonging to the State, for the lands entered by said defendant be-
low, the above sum.

The defendant then asked the Court to instruct the jury, that if
they believed, from the evidence, that the accounts of the defend-
ant were settled and adjusted by the late Board of Public Works,
said settlement is final and conclusive between the parties, and
they are bound to find the balance due the defendant on said set-
tlement; and that if the late Board of Public Works adjudicated
upon the accounts in dispute, said adjudication is final and con-
clusive.   Both which instructions the Court refused, to which the
defendant excepted.

The bill of exceptions does not contain all, but only so much of
the evidence as elucidates the objections and exceptions.

The plaintiff here assigns two errors :

*First.*   The admission of parol evidence to prove the payment
of $25,079.30 into the land office; and

*Second.*   The refusal to give the instructions asked.

We are at a loss to perceive upon what ground, rule, or prin-
ciple of law, parol evidence is inadmissible under a count for
money had and received.   The law (1) requires the money to be
drawn on drafts, &c.; but can a principle so repugnant to common
justice obtain, as that, if an individual should obtain possession of

(1) Acts of 1837, 138; Gale's Stat. 364.

another's money, by violating the law, he would not be liable to an action for money had and received? It is the very gist of the action, that the money came into his hands contrary to the directions of the statute. Otherwise, having made his covenant to discharge his duties, as commissioner, faithfully, the action should have been upon his bond. We cannot perceive that his character, as commissioner, varies the case in the least, so far as the grade of evidence is concerned. The same form of action, and the same character of evidence, will establish his liability, as would a private individual's, who received the money of the State. The certificates of entry, which were delivered to the plaintiff, by the land officers, on the payment of these moneys, by the clerk of the Fund Commissioners, although of a higher grade of evidence than parol, (1) will not change and elevate the grade of evidence necessary to show who paid the money, and to whom it belonged. One may purchase land with another's money, and take a deed to himself, yet parol evidence would be admissible to support assumpsit for money had and received, to recover it back; or upon a bill filed to declare the resulting trust, and for a conveyance, parol evidence would be sufficient to sustain it; while the evidence of title, purchased with the money, would be by deed. The rule, as we understood it to be contended for, would open the door to, and work the greatest injustice and fraud, if settled as a principle of law.

The clerk of the Board of Fund Commissioners, without any draft by the plaintiff, or written order from the Fund Commissioners, but upon their verbal directions, paid into the land office the sum of $25,079.32, and for which certificates of entry, we must presume, were issued, and delivered to the defendant, constituting vouchers, in his hands, for so much money paid out, as commissioner, for the State. Upon settlement, these certificates of entry are brought forward as vouchers, by the defendant, and he is allowed the amount; not having given any drafts that would charge or debit him with the amount. That such is the fact, we are compelled to infer, from the testimony before us, and the items in the defendant's plea of setoff, chargeable to the "Central, Alton, and Mt. Carmel, and Alton and Shelbyville Railroads," amounting aggregately to a sum exceeding $33,000 more than the sum shown to have been paid by the clerk, the whole of which doubtless was paid for lands entered.

Upon what rule of law, or principle of justice, he can take advantage of his possession of these certificates of entry, to exclude parol evidence as to whom the money belonged that purchased them, and who paid it, we are at a loss to conjecture.

The second error is the refusal to give the instructions asked. The other specification of error in the same assignment, that the

(1) R. L. 230; Gale's Stat. 287.

Court decided that the adjustment by the committee was open to investigation, seems to us to have been its reasoning *arguendo*, and not an instruction to the jury. The error, if any, arises upon the supposed character of the Board of Public Works, when sitting under the statute, (1) to adjust and audit the accounts of its members and others. It does not possess the character and partake of judicial powers, but simply those of agency on the part of the State, to state an account, and agree upon a balance. Their finding is not an adjudication, but simply adjusting the amount, and striking a balance. They have no power to enforce its payment; and the legislature has not declared it conclusive or final. Doubtless it would be, like any other settlement of accounts by individuals, *prima facie* evidence of the balance struck. They amount only to *prima facie* evidence, and may be opened by showing fraud or mistake, or that any item, really existing, was not taken into account. (2) The Court, therefore, could not have given the instructions asked, that the settlement was either final and conclusive, or an adjudication. Nor do we conceive it to be open to re-investigation upon the items included in it, unless it be impeached for fraud or mistake. But additional items may be added, upon showing that they were omitted to be taken into the account. We think the plaintiffs have successfully impeached this settlement, for mistake and omission, not to use harsher terms. Upon the payment, by the clerk, of this sum into the land office, the defendant receives the certificates of entry, not having given any draft that would charge him with the amount. Yet upon the settlement, with full knowledge of this fact, he presents these certificates of entry, as vouchers in his favor, and is credited with the amount. The committee decline charging him with the sum, because " the committee do not find a voucher or any other evidence filed in this office." Evidence, *aliunde* the files of that office, would have been sufficient. They do not decide that none such existed. They neither reject nor allow the item. If they had, there is sufficient evidence, on the record, to show that it ought to have been allowed, and doubtless would have been, if they had had the same evidence before them.

It is the opinion of the Court that the judgment be affirmed with costs.

*Judgment affirmed.*

(1) Acts of 1837, 125; Gale's Stat. 353.
(2) 2 Phil. Ev., Cowen & Hill's Notes, 124, note 360, p. 225; 11 Wheat. 237, 256; 2 Har. & Johns. 213; 2 Mason 541, 561; 1 Term R. 42.